UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:19-CV-00127-HBB

**LYSA F. POWELL**                                                                                                    **PLAINTIFF**

VS.

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                                        **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Lysa F. Powell ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Plaintiff has filed a Motion for Summary Judgment and a Fact and Law Summary (DN 16, 17) and Defendant has responded with a Fact and Law Summary (DN 20).  For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12).  By Order entered

December 4, 2019 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## FINDINGS OF FACT

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on April 11, 2018 (Tr. 12, 191, 201). Plaintiff alleged that she became disabled on August 5, 2017, as a result of back pain; arthritis in the knees, hips, and legs; generalized anxiety disorder; and major depressive disorder (Tr. 222). Administrative Law Judge Michael Scurry ("ALJ") conducted a hearing on April 22, 2019, in Evansville, Indiana (Tr. 12, 28-33). Plaintiff was present and represented by attorney Jessie Poag (Id.). Matthew E. Sprong, Ph.D., an impartial vocational expert, testified during the hearing (Id.).

In a decision dated May 1, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 12-23). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 5, 2017, the alleged onset date (Tr. 14). At the second step, the ALJ determined that Plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD) (Tr. 15). The ALJ also determined that Plaintiff's back pain, and arthritis in her knees, hips, and legs are not medically determinable impairments (Tr. 15). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember, and apply information for unskilled, routine, repetitive

tasks; she can concentrate, persist, and maintain pace for such tasks with routine changes and routine support and structure, and can interact with the public occasionally (Tr. 17). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 21).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 21-22). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 5, 2017, through the date of the decision, May 1, 2019 (Tr. 22).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 187-90). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a

case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

    1)    Is the claimant engaged in substantial gainful activity?

    2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

    3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

    4)    Does the claimant have the RFC to return to his or her past relevant work?

    5)    Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding No. 5

1. Arguments of the Parties

Plaintiff argues the ALJ's RFC is not supported by substantial evidence because it is contradicted by the only examining opinion of record (DN 17-1 PageID # 374, 376-85). Specifically, Plaintiff is referring to the opinion of Margaret Sergeant, Ph.D., BCBA-D (Id.). In pertinent part, Dr. Sergeant opined that Plaintiff has moderate to marked limitations in her abilities: to tolerate the stress and pressure of day-to-day employment; and to sustain attention and concentration towards the completion of tasks under time constraints (Id.). Plaintiff argues that Dr. Sergeant's opinion contains greater and far more detailed limitations than contained in the

ALJ's RFC and it establishes she is disabled (Id. citing Social Security Ruling 85-15). Plaintiff contends the ALJ failed to give legally sufficient good reasons to reject Dr. Sergeant's medical opinion (Id.). Alternatively, Plaintiff argues because the opinion of Dr. Sergeant and the opinions of the non-examining state agency psychologists are, at the very least, equally supported and consistent with the record, the regulations required the ALJ to discuss the other factors for assessing the persuasiveness of the opinions (Id. citing 20 C.F.R. §§ 404.1520c(b)(2) and (b)(3), 416.920c(b)(2) and (b)(3)).

      Defendant argues the ALJ properly found the portion of Dr. Sergeant's opinion indicating moderate restrictions is more persuasive than the part expressing marked restrictions (DN 20 PageID # 433-47). Defendant believes the ALJ reasonably relied on the opinions of the non-examining state agency psychologists, Ilze Sillers, Ph.D., and Tonya Gonzalez, Psy.D., who considered the evidence in the record, including Dr. Sergeant's report and opinions, and concluded that Plaintiff had only moderate restrictions (Id.). Further, the ALJ appropriately considered the opinion evidence in assessing Plaintiff's mental RFC and reasonably concluded she could perform the basic mental demands of unskilled work with additional mental functioning limitations (Id. citing Tr. 15-21). Additionally, to the extent Dr. Sergeant opined Plaintiff could not complete full-time work or was otherwise unemployable due to marked functional limitations, Defendant asserts this opinion is "inherently neither valuable nor persuasive" under the regulations because opinion was on an issue reserved to the Commissioner (Id. citing 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3)).

2. Discussion

The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). The administrative law judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). Thus, in making the residual functional capacity finding the administrative law judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a), 416.920c, 416.929(a).

The new regulations for evaluating medical opinions are applicable to Plaintiff's case because she filed her application after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[1] in the record, even if it comes from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). [2] Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with

---

[1] At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulations. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).
[2] Contrary to Plaintiff's contention, the language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c).

the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[3] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). The regulations require administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Notably, administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ provided a comprehensive summary of Plaintiff's statements and testimony regarding her mental impairments (Tr. 17-19). The ALJ set forth a complete discussion of the medical records from Dr. Debra Wallace, a treating general practitioner who prescribed Xanax for Plaintiff's anxiety and Prozac for her depression (*Compare* Tr. 16, 18-19 *with* 265-84, 292-301). The ALJ included a comprehensive discussion of Dr. Sergeant's report, diagnostic impression (major depressive disorder and generalized anxiety disorder), and opinion regarding the degree of limitation imposed by the mental impairments (*compare* Tr. 15-16, 19-20 *with* Tr. 286-90). The ALJ also provided a complete summary of the administrative medical findings[4] rendered at the

---

3 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

4 The opinions of Drs. Sillers and Gonzalez included Plaintiff's limitations within the work setting (Tr. 63-64, 74-75, 87-88, 98-99). For example, they opined that Plaintiff had a moderate limitation on her capacity to understand and remember detailed instructions, but she was not significantly limited as to understanding very short and simple instructions; she had a moderate limitation on her ability to carry out detailed instructions and to maintain attention and concentration for extended periods, but she was not significantly limited as to carrying out short simple instructions; she had a moderate limitation on her ability to interact appropriately with the general public, but she was not significantly limited as to getting along with coworkers or peers without distracting them or exhibiting behavioral extremes (Id.).

initial and reconsideration levels by the non-examining state agency psychological consultants, Drs. Sillers and Gonzalez (*compare* Tr. 20 *with* Tr. 56-66, 67-77, 80-90, 91-101). Before rendering their opinions, Drs. Sillers and Gonzalez reviewed the record which included Dr. Wallace's treatment records and Dr. Sergeant's report (Tr. 56-66, 67-77, 80-90, 91-101).

The ALJ observed that Drs. Sillers and Gonzalez ultimately found Plaintiff was capable of performing detailed tasks that required some skills, but not complex duties; maintaining concentration and attention for two-hour segments; completing a normal workday/work week; respond appropriately to supervisors and coworkers in a setting requiring occasional contact with the public; and adapting to routine changes and avoid hazards (Tr. 20). The ALJ determined that these opinions are consistent with Plaintiff's lack of steady, ongoing mental health treatment; her mild exam findings; her improvement with medication; and the indications that she stopped work for reasons other than her physical and mental impairments (Tr. 20). But given Dr. Sergeant's opinion that Plaintiff would be moderately limited in her capacity to understand, retain, and follow instructions to perform unskilled work, the ALJ found it more reasonable to limit Plaintiff to unskilled, routine, repetitive tasks (Id.). In sum, the ALJ found the opinions of Drs. Sillers and Gonzalez persuasive and consistent with the evidence of record (Id.). The Court concludes the ALJ's evaluation of the persuasiveness of the prior administrative medical findings is supported by substantial evidence in the record and comports with applicable law.

The ALJ found Dr. Sergeant's opinion[5] regarding moderate restrictions more persuasive than her opinion regarding marked associated restrictions because of Plaintiff's history, medical evidence, activities of daily living, and the consultative exam findings (Tr. 20). Further, the ALJ pointed out that the medical record is not consistent with any marked limitations in Plaintiff's mental abilities (Id.). Therefore, the ALJ concluded that "Dr. Sergeant's opinion as a whole is somewhat persuasive" (Id.). Notably, the ALJ relied on one of Dr. Sergeant's moderate limitations when he concluded it is more reasonable to restrict Plaintiff to "unskilled, routine, repetitive tasks" than detailed tasks that require some skills, but not complex duties (Id.). The ALJ's evaluation of the persuasiveness of Dr. Sergeant's opinion is supported by substantial evidence in the record and comports with applicable law.

The regulations direct when administrative law judges find that two or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same, they "will articulate" how they "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)" of the regulations. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). Here, the ALJ addressed just such a situation. Drs. Sillers and Gonzalez opined Plaintiff was capable of doing tasks that required some skills, but not complex duties. Dr. Sergeant opined Plaintiff would be moderately limited in her capacity to understand, retain, and follow instructions to perform unskilled work. The ALJ cited Dr. Sergeant's examining

---

5 Dr. Sergeant opined that Plaintiff had a moderate limitation on her capacity: to understand, retain, and follow instructions towards the performance of simple, repetitive tasks; and to respond appropriately to supervisors, co-workers, and the general public in a work setting (Tr. 289). Dr. Sergeant opined that Plaintiff had a moderate to marked limitation on her capacity: to sustain attention and concentration towards the completion of tasks under time constraints; and to tolerate stress; and the pressure of day-to-day employment (Id.). Further, Dr. Sergeant indicated that in the absence of treatment, Plaintiff's "mental health prognosis would likely be guarded" (Tr. 290).

relationship and opinion in the ALJ's explanation why he found "it is more reasonable to restrict the claimant to unskilled, routine, repetitive tasks" (Tr. 20). S*ee* 20 C.F.R. §§ 404.1520c(c)(3)(v) and 416.920c(c)(3)(v). Thus, contrary to Plaintiff's assertion, the ALJ did articulate how he considered the other factors in paragraphs (c)(3) through (c)(5) of the regulations.

Finding No. 10

1. Arguments of the Parties

Plaintiff contends the ALJ erred by denying her the opportunity to raise objections and present rebuttal evidence demonstrating the vocational expert's testimony was based on obsolete information in the Dictionary of Occupational Titles (DN 17-1 PageID # 374, 385-97).[6] Plaintiff explains that in her pre-hearing memorandum she requested 30-days for post-hearing development to object, if warranted, to the testimony of the vocational expert (Id. citing Tr. 259). Plaintiff concedes that she did not raise her 30-day request during the administrative hearing (Id.). But Plaintiff points out that two days after the hearing she submitted a memorandum asserting three specific objections to the vocational expert's testimony and rebuttal evidence (Id. citing Exhibit A pages 1-26). Plaintiff argues despite her constitutional and statutory right to cross-examine witnesses, present evidence and confront evidence against her, the ALJ overruled her post-hearing objections as untimely and refused to enter the objections memorandum into evidence (Id. Tr. 12). Plaintiff characterizes the vocational expert's testimony as a surprise that she could not have effectively addressed through cross-examination (Id.). Plaintiff contends the ALJ's rejection of

---

6 Along with her fact and law summary filed with the Court, Plaintiff has filed a copy the objections memorandum submitted to the ALJ, as Exhibit A, and the declaration of attorney Jari R. Martin as Exhibit B (DN 17-1 PageID # 374, 385-97).

her memorandum of objections is not harmless error because the objections and evidence present issues facially relevant to the ALJ's step 5 finding and, if accepted, are outcome determinative (Id.).

Defendant asserts that substantial evidence supports the ALJ's finding that Plaintiff can perform other jobs existing in significant numbers in the national economy[7] (DN 20 PageID # 447-60). Defendant points out that Plaintiff only asked the vocational expert one question[8] on cross-examination (Id.). Defendant asserts that Plaintiff had the opportunity but failed to ask the vocational expert about the skill level of these jobs, whether these occupations remained unskilled under O*NET or the Standard Occupational Classification Codes (SOC), and to compare information in the DOT and O*NET regarding the three occupations (Id. citing Tr. 48-54). Defendant acknowledges Plaintiff's prehearing request to submit a post-hearing argument[9], but points out Plaintiff failed to mention this during the hearing (Id.). Further, the ALJ's decision unequivocally denied Plaintiff's request to hold the record open and explained because she was able to question the vocational expert during the hearing, her post-hearing memorandum and objections to the vocational expert's testimony were untimely and overruled (Id. citing Tr. 12). Defendant contends that the ALJ's rulings were sufficient to satisfy any generalized requirement to "consider" all of the evidence (Id.). Defendant also points out that a claimant who fails to

---

7 Defendant indicates that the vocational expert responded to the ALJ's hypothetical question by providing three examples of unskilled occupations that were compatible with the limitations: industrial cleaner, laundry laborer, and stuffer (DN 20 PageID # 447-49, citing Tr. 52).
8 Specifically, Plaintiff asked about the source of the vocational expert's numbers and the vocational expert identified Occupational Employment Quarterly, which he adjusted to remove part time work and then rounded down to the nearest 10,000 jobs (Id. citing Tr. 53).
9 The pre-hearing brief, dated one week before the hearing, requested the record be held open for 30 days after the hearing, if a a vocational expert testifies at step 5 about specific jobs and the numbers of those jobs in the national economy, so Plaintiff may submit post-hearing argument regarding those vocational issues (Id. citing Tr. 259).

object to vocational expert testimony at the hearing may waive or forfeit the right to latter objections (Id. citing Barrett v. Barnhart, 355 F.3d 1065, 1067 (6th Cir. 2004) and numerous other cases). Defendant also asserts that the ALJ followed Social Security Ruling 00-4p (Id. citing Tr. 52). Defendant also cites a recent Sixth Circuit holding that undermines Plaintiff's position (Id. O'Neal II v. Comm'r of Soc, Sec., ___ F. App'x ___, 2020 WL 97414 (6th Cir. Jan. 7, 2020)).

2. Discussion

The Sixth Circuit, albeit in an unpublished opinion, previously cautioned that "*common sense dictates*" when job descriptions in the DOT "appear obsolete, a more recent source of information should be consulted." Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added). Several district courts in the Sixth Circuit followed Cunningham and remanded matters to the Commissioner when the vocational expert's reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt whether substantial evidence supported the ALJ's determination at the fifth step. *See e.g.* Wright v. Berryhill, No. 4:18-CV-00021, 2019 WL 498855, at *9 (W.D. Ky. Feb. 8, 2019); Westmoreland v. Berryhill, No. 3:17-cv-00096, 2018 WL 1522118, at *4 (S.D. Ohio Mar. 28, 2018); Rollston v. Comm'r of Soc. Sec., No. 1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016). Other district courts within the Sixth Circuit have criticized Cunningham's reasoning and declined to follow its holding. *See e.g.* Kidd v. Berryhill, No. 5:17-CV-420-REW, 2018 WL 3040894, at *7-10 (E.D. Ky. June 19, 2018); Montano v. Comm'r of Soc. Sec., No. 1:13-cv-70, 2014 WL 585363, at *15 (S.D. Ohio Feb. 14, 2014); Belew v. Astrue, No. 2:11-107-DCR, 2012 WL 3027114, at *9-10 (E.D. Ky. July 24, 2012).

In a recently issued unpublished order, the Sixth Circuit attempted to resolve the apparent confusion among some of the district courts. O'Neal v. Comm'r of Soc. Sec., No. 18-2372, ___ F. App'x ___, 2020 WL 97414, at *3-4 (6th Cir. Jan. 7, 2020). Because the regulations continue to recognize the DOT as a source of reliable information and the claimant did not to cross-examine the vocational expert about the DOT job descriptions when he had the opportunity, the Sixth Circuit held the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that the claimant was able to perform work that existed in significant numbers in the national economy. Id.

Applying the holding in O'Neal to the circumstances before the Court, during the administrative hearing the vocational expert responded to ALJ's first hypothetical question by testifying that the individual could perform occupations such as industrial cleaner, DOT # 381.687-018, with 469,000 jobs in the national economy; laundry laborer, DOT # 361.687-018, with 79,000 jobs in the national economy; and stuffer, DOT # 520.685-010, with 42,000 jobs in the national economy (Tr. 51-52).

On cross-examination, Plaintiff asked for the source of the job numbers the vocational expert provided in response the ALJ's first hypothetical question (Tr. 53). The vocational expert responded by identifying the U.S. Publishing Occupational Employment Quarterly (Id.). Plaintiff next asked if the vocational expert made any adjustments to the numbers (Id.). The vocational expert responded that he removed the 18% part-time work and rounded down to the nearest ten thousand (Id.). Plaintiff then indicated she had no more questions for the vocational expert (Id.).

Although Plaintiff had the opportunity, she did not cross-examine the vocational expert about the DOT descriptions for these three jobs (Tr. 53). Thus, considering the holding in O'Neal,

14

the vocational expert's testimony constitutes substantial evidence to support ALJ's finding that Plaintiff is able to perform work that exists in significant numbers in the national economy.

Additionally, in the decision, the ALJ acknowledged Plaintiff's pre-hearing request to hold the record open for 30 days after the hearing to "address vocational issues" (Tr. 12 citing Tr. 258-60).  The ALJ responded as follows:

> That request is denied.  The Post-Hearing Memorandum and Objections to the Vocational Witness' Testimony dated April 23, 2019 is not admitted into the record.  During the hearing the claimant's attorney was able to question the vocational expert, and the objections after the hearing are untimely and are overruled.

(Tr. 12).  The ALJ clearly explained that Plaintiff should have raised her objections through cross-examination of the vocational expert but failed to do so.  For this reason, the ALJ denied Plaintiff's request to hold the record open, and he overruled as untimely Plaintiff's post-hearing objections to the vocational expert.  Contrary to Plaintiff's assertion, the ALJ provided an adequate explanation for his rulings.  Further, considering the Sixth Circuit's recent holding in O'Neal, the ALJ's rulings comport with applicable law in this Circuit.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

April 20, 2020

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel